# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | |
| | * | **CRIMINAL NO.  PJM 23-442** |
| **BINIAH CARTER,** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |
| | ****** | |

## UNITED STATES' OPPOSITION TO BINIAH CARTER'S MOTION
## TO DISMISS COUNTS FOURTEEN AND EIGHTEEN OF THE INDICTMENT

## TABLE OF CONTENTS

INTRODUCTION..................................................................................................................3

THE INDICTMENT............................................................................................................4

COUNTS FOURTEEN AND EIGHTEEN SHOULD NOT BE DISMISSED...................................7

  A. Counts Fourteen and Eighteen Sufficiently Allege Aggravated Identity Theft.....................8

    I.     Counts Fourteen and Eighteen "Allege the Elements of the Offense"............................8

    II.    Counts Fourteen and Eighteen "Allege the Essential Facts Constituting the  Offense" 10

        i.     The Indictment Sufficiently Alleges Acts of "Identity Theft"...............................12

        ii.    The Indictment Sufficiently Alleges that the Use of the Identities Was at the Crux of the Criminality...........................................................................................17

THE AGGRAVATED IDENTITY THEFT STATUTE IS NOT UNCONSTITUTIONALLY VAGUE.......................................................................................................................20

CONCLUSION................................................................................................................22

STATEMENT WITH RESPECT TO ORAL ARGUMENT............................................................23

CERTIFICATE OF SERVICE...............................................................................................24

## I.      INTRODUCTION

Defendant Biniah Carter ("Carter") engaged in a wide-ranging mail and bank fraud conspiracy that stole hundreds of checks from the United States mail, altered those checks, and deposited them to bank accounts belonging to others to steal money. *See* ECF No. 1 (Indictment). After having unlawfully possessed, transferred, and used the means of identification of numerous individuals to defraud fraud banks, including that belonging to Identity Theft Victim #3 and Account Mule #2, Carter now presses this Court to dismiss Counts Fourteen and Eighteen, charging her with Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A. ECF No. 74 (Deft. Mot.)

Carter argues that pursuant to *Dubin v. United States*, 599 U.S. 110 (2023) the Indictment fails to allege essential elements and essential facts, claiming that she neither "stole" nor deceitfully used the means of identification belonging to Identity Theft Victim #3 and Account Mule #2. Alternatively, Carter argues that Counts Fourteen and Eighteen should be dismissed because § 1028A is unconstitutionally vague. Carter's arguments fail.

*First*, *Dubin* did not create new elements, therefore, the Indictment sufficiently alleges the elements of aggravated identity theft as provided by the Fourth Circuit. *See United States v. Abdelshafi*, 592 F.3d 602, 607 (4th Cir. 2010). *Second*, Carter's use of the identities amounted to "classic identity theft," which the Indictment sufficiently alleges. *See Dubin*, 599 U.S. at 126. *Third*, Carter's use of the identities was the "key mover" in the offense and directly enabled the fraud to occur and, therefore, is at the "crux" of what makes Carter's conduct criminal. *Id*. at 131. *Fourth*, § 1028A is not unconstitutionally vague. This argument was explicitly rejected by *Dubin*. *Id*. at 132 n.10. Carter is alleged to have knowingly altered stolen checks and used means of identification to defraud banks and should have been on sufficient notice that her conduct, violated

the text of § 1028A.

Accordingly, the Indictment sufficiently apprises Carter of the charges and facts supporting them. Therefore, the Court should deny Carter's Motion.

## II.   THE INDICTMENT

Defendant Biniah Carter is charged in a multi-count indictment (the "Indictment") alleging conspiracy to commit mail and bank fraud; (2) ten counts of bank fraud; and (3) seven counts of aggravated identity theft. ECF No. 1. Specifically, Carter is charged with conspiracy to commit mail and bank fraud (Count One), two counts of bank fraud (Counts Four and Six), and two counts of aggravated identity theft (Counts Fourteen and Eighteen). *Id.* The scheme involved stealing personal and business checks from the United States mail, altering those checks, and depositing them to account mule bank accounts at financial institutions.[1] *Id.* The financial institutions include BB&T bank, Wells Fargo Bank, and Navy Federal Credit Union, which are all described as having establishments and employees in Maryland and elsewhere. *Id.* at ¶ 3.

Other individuals named in the Indictment are Carter's co-defendants—Tianna Cosby, Marche Sisco, Tommi Cosby, and Zion Adeduwon. *Id.* at ¶ 1. Carter and her co-defendants are all described as residents of Maryland. *Id.* Sisco is described as a mail handler assistant for the United States Postal Service at the Washington Network Distribution Center ("NDC"), a location responsible for sorting and distributing mail from across the United States. *Id.* at ¶ 2.

Count One of the Indictment alleges that from a time unknown to the Grand Jury, but beginning at least in or about March 2021, and continuing through at least in or about August 2021, the Defendants conspired to commit mail fraud and bank fraud, that is:

---

[1] The Indictment defines an "account mule" as an individual whose "bank account was used to deposit illegally acquired checks and proceeds." ECF No. 1 at ¶ 4. Carter offers her own definition of an account mule that implies that they are all co-conspirators because they all knew about the scheme. Deft. Mot. at 2, fn. 2. The Indictment does not make such an allegation.

to devise and intend to devise a scheme and artifice to defraud, and to obtain money by means of materially false and fraudulent pretenses, representations, promises, and material omissions (the "scheme to defraud"), and, for the purpose of executing and attempting to execute the scheme to defraud, to take and receive any matter and thing whatever to be sent or delivered by the USPS, in violation of 18 U.S.C. § 1341; and

to execute and attempt to execute a scheme and artifice to defraud the victim financial intuitions, and to obtain and attempt to obtain monies, funds, credits, assets, and securities owned by and under the custody and control of the victim financial institutions by means of materially false and fraudulent pretenses, representations, and promises, in violation of 18 U.S.C. § 1344.

*Id*. at ¶ 6.

The Indictment alleges that hundreds of personal and business checks were stolen from the United States mail and subsequently used by Carter and her co-defendants to obtain money. *Id*. at ¶¶ 7–19. Once the checks were obtained, Carter and her co-defendants recruited account mules and collected, possessed, transferred, and used their means of identification[2] and banking information. *Id*. at ¶¶ 12–14. The Indictment specifically alleges that Account Mule #2's means of identification was among those collected, exchanged, and used. *Id*. at ¶14.

Paragraph 15 further alleges that Carter and her co-defendants "used, transferred, and possessed the means of identification belonging to identity theft victims, including, without limitation, Identity Theft Victims #1 through #5." The indictment further alleges that once all the means of identification were collected, Carter and her co-defendants altered the identity theft victims' checks to reflect payment to account mules. *Id*. at ¶ 16.

Carter and her co-defendants then deposited the "altered and fraudulent checks into bank accounts belonging to the account mules at financial institutions." *Id*. at ¶ 18. Carter and her co-

---

[2] The Indictment defines "means of identification" as any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual, including any name, social security number, date of birth, government issued identification number, bank account number, and bank personal identification number.

defendants subsequently obtained the proceeds from the "altered and fraudulent checks by engaging in various monetary transactions to withdraw the proceeds[.]" *Id*. at ¶ 19.

Counts Two through Eleven are bank fraud and aiding and abetting bank fraud charges, each based on stolen checks that were falsified and deposited by Carter and her co-defendants. *Id*. at 5–6. Relevant here, Counts Four and Six allege that Carter executed a scheme to defraud Navy Federal Credit Union ("NFCU"), and sought to obtain money under its custody and control by "means of false and fraudulent pretenses, representations, and promises and material omissions." *Id*. Count Four, against Carter only, alleges that Carter "[d]eposited an altered version of Check 590, in the amount of approximately $800[.]"  Count Six  alleges that Carter, Tianna Cosby, Sisco, and Tommi Cosby "[d]eposited, and caused to be deposited, an altered version of Check 3411, in the amount of approximately $8,912.50[.]"

Counts Twelve through Eighteen charge aggravated identity theft and aiding and abetting aggravated identity theft charges. Paragraphs 1 through 5 and 7 through 19 of Count One of the Indictment are incorporated. *Id*. at 7–8. Each count is based on the transfer, possession, and use of a means of identification belonging to Identity Theft Victims #1 though #5 and Account Mules #1 and #2. *Id*. Count Fourteen, against Carter only, charges her with transferring, possessing, and using the means of identification (name, address, and bank account number) of Identity Theft Victim #3, during and in relation to Count One (the conspiracy) and Count Four (Carter's deposit of a falsified version of Identity Theft Victim #3's check to defraud NFCU and obtain money under its control through materially false and fraudulent representations and promises). *Id*. Count Eighteen charges Carter, Tianna Cosby, and Tommi Cosby with transferring, possessing, and using the means of identification of Account Mule #2 (name, mailing address, online banking information, and bank PIN), during and in relation to Count One and Count Six (the deposit of Identity Theft Victim #5's

check, which was falsified to reflect Account Mule #2 as the payee, into Account Mule #2's bank account). *Id.*

### III.   COUNTS FOURTEEN AND EIGHTEEN SHOULD NOT BE DISMISSED

Carter moves to dismiss Counts Fourteen and Eighteen of the Indictment pursuant to Rule 12 of the Federal Rules of Criminal procedure, contending that Counts Fourteen and Eighteen fail to state an offense, and in the alternative, that Counts Fourteen and Eighteen should be dismissed because the aggravated identity theft statute (18 U.S.C. § 1028A) is unconstitutionally vague. *See generally* Deft. Mot. For the reasons below, Carter's arguments fail.

"A valid indictment must: (1) allege the essential facts constituting the offense; (2) allege each element of the offense, so that fair notice is provided; and (3) be sufficiently distinctive that a verdict will bar a second prosecution for the same offense." *United States v. Bolden*, 325 F.3d 471, 490 (4th Cir. 2003). In some circumstances, use of statutory language can be sufficient if "the words used in the indictment 'fully, directly, and expressly, without any certainty or ambiguity, set forth all the elements necessary to constitute the offence[.]'" *United States v. Brandon*, 298 F.3d 307, 310 (4th Cir. 2002) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)). The *Brandon* Court further stated:

> However, simply parroting the language of the statute in the indictment is insufficient. When the words of a statute are used to describe the offense generally, they "must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which is charged." [*Hamling*, 418 U.S.] at 117–18 (internal quotation marks omitted). Thus, the indictment must also contain a "statement of the *essential facts* constituting the offense charged." Fed. R. Crim. P. 7(c)(1) (emphasis added); *see United States v. Smith*, 44 F. 3d 1259, 1263 (4th Cir. 1995).

*Id.*

Moreover, in reviewing a motion to dismiss an indictment for failure to state an offense, a district court must accept all factual allegations in the indictment as true.  *See Boyce Motor Lines v.*

*United States*, 342 U.S. 337, 343 n.16 (1952).   A court must also construe an indictment in a "practical," rather than "purely technical" manner, "[a]pplying a liberal standard in support of sufficiency." *United States v. Matzkin*, 14 F.3d 1014, 1019 (4th Cir. 1994); *see United States v. Terry*, 257 F.3d 366, 371 (4th Cir. 2001) (King, J., concurring) ("It is elementary that a motion to dismiss an indictment implicates only the legal sufficiency of its allegations, not the proof offered by the Government.").

**A.   Counts Fourteen and Eighteen Sufficiently Allege Aggravated Identity Theft**

**1.   Counts Fourteen and Eighteen "Allege the Elements of the Offense"**

Carter argues that Counts Fourteen and Eighteen must be dismissed because they fail to allege the elements of Aggravated Identity Theft following *Dubin*. Deft Mot. at 9–10. To the contrary, the Indictment sufficiently apprises Carter of the elements of the offense. "To establish a violation of § 1028A(a)(1), the Government must prove the defendant (1) knowingly transferred, possessed, or used, (2) without lawful authority, (3) a means of identification of another person, (4) during and in relation to a predicate felony offense." *United States v. Abdelshafi*, 592 F.3d 602, 607 (4th Cir. 2010). The Indictment here faithfully alleges these elements. Counts Fourteen and Eighteen each assert that Carter knowingly transferred, possessed, and used, "without lawful authority, a means of another person, knowing that the means of identification belong to a real person, during and in relation to a felony offense enumerated in 18 U.S.C. § 1028A(c), that is, conspiracy to commit mail fraud and bank fraud . . . and bank fraud[.]" ECF No. 1 at 7. Further, Counts Fourteen and Eighteen state that Carter transferred, possessed, and used a means of identification pursuant to a *specific* bank fraud count, and the mail fraud and bank fraud conspiracy charged in Count One. *Id*. at 7–8.

Contrary to Carter's position, *Dubin* did not add elements "to the aggravated identity theft statute." *United States v. Demasi*, No. 1:22-CR-20670, 2023 WL 8007341, at *5 (E.D. Mich. Nov. 17, 2023); *see Dubin*, 599 U.S. at 118 (looking at the words "use" and "in relation" "to determine

the meaning Congress Intended."); *United States v. Croft*, No. SA-18-CR-00603-DAE, 2024 WL 866354, at *2 (W.D. Tex. Feb. 29, 2024) ("In *Dubin*, the Supreme Court clarified the elements of aggravated identity theft[.]"); *United States v. Gladden*, 78 F.4th 1232, 1244 (11th Cir. 2023) ("In *Dubin*, the Supreme Court held that the words 'use' and 'in relation to' . . . should not be read so broadly[.]").  Instead, the *Dubin* Court clarified the interpretation of the first and "fourth elements listed above—that a defendant *used* another's identification information without lawful authority *in relation to* or *during* the commission of a predicate felony." *Demasi*, 2023 WL 8007341, at *4.

In *Dubin*, the petitioner was charged with health care fraud and aggravated identity theft for submitting a reimbursement using a patient's Medicaid number that "overstated the qualifications of the employee who actually performed the [psychological] testing[.]" *Dubin*, 599 U.S. at 114–15. "This falsehood inflated the amount of reimbursement," an act of overbilling. *Id*. The court found that because the petitioner's use of the means of identification was not at the "crux" of what made the underlying offense criminal, he could not be held liable under the aggravated identity theft statute. *Id*. at 131–32. Nowhere in *Dubin* did the Supreme Court announce new elements to § 1028A. *Id*.

This is further supported by the *Sand and Siffert*, Modern Federal Jury Instructions (the "*Sand* Instructions")—the jury instructions used by this Court. *See Sand*, Instruction 39A-51. Instruction 39A-51 identifies the same elements of Aggravated Identity Theft that the Fourth Circuit did in *Abdelshafi*, 592 F.3d at 607 (above)—which are alleged in the Indictment. In fact, the *Sand* Instructions cite *Dubin* when *explaining* the first element, "Use of Means of Identification. *See Sand*, Instruction 39A-52. This should end the analysis—full stop.

Yet, Carter presses this Court to view jury instructions from other districts to find that Counts Fourteen and Eighteen fail to allege the elements of Aggravated Identity Theft. Deft. Mot. at 10. Carter relies on *United States v. Jones* and *United States v. Sheppard*, however, neglects to note that in both cases the defendants raised motions to dismiss the indictment based on *Dubin* and were

denied. *United States v.* Jones, No. 4:23-cr-09 (RCY), 2023 WL 4672383, at *5 (E.D. Va. July 20, 2023) (denying defendant's motion to dismiss because the indictment complied "with the more exacting standards outlined in *Dubin v. United States*."); *United States v. Sheppard*, No. 22-cr-20290, 2023 WL 7157874, at *5 (S.D. Fla. Oct. 31, 2023) (denying defendant's motion to dismiss because the "Superseding Indictment sets forth the essential elements of Aggravated Identity Theft[.]").[3] Notably, the indictments in *Jones* and *Sheppard* did not allege any of Carter's suggested new "elements" or "requirements." *See Jones*, No. 4:23-cr-09 (RCY), ECF No. 1; *Sheppard*, No. 22-cr-20290, ECF No. 60.  Instead, the indictments alleged the same elements as those here.

Therefore, Counts Fourteen and Eighteen "allege each element of the offense," and sufficiently apprise Carter of the allegations. *Bolden*, 325 F.3d at 490.

### 2. Counts Fourteen and Eighteen "Allege the Essential Facts Constituting the Offense"

Next, relying on *Dubin*, Carter argues that Counts Fourteen and Eighteen must be dismissed because the Indictment: (1) fails to allege essential facts showing "identity theft," and (2) fails to allege that the use of the identities was at the "crux" of what made her conduct criminal. Deft Mot. at 11–16. For the reasons below, Carter's arguments fail.

---

[3] Following a jury trial in *Sheppard*, the defendant filed a Motion for Judgment of Acquittal and a Motion for New Trial based on the jury's verdict of guilty on Aggravated Identity Theft charges. *United* States v. *Sheppard*, No. 22-CR-20290, 2024 WL 2815278, at *1 (S.D. Fla. June 3, 2024). The district court vacated the Aggravated Identity Theft conviction finding that the facts presented at trial did not prove that the means of identification was at the crux of the fraud. *Id.* As addressed later, *Sheppard* is inapposite. *First*, "only the legal sufficiency of [the Indictment's] allegations, not the proof offered by the Government" is presently at issue. *Terry*, 257 F.3d at 371. Indeed, that the district court in *Sheppard* denied the defendant's motion to dismiss yet granted the defendant's motion for acquittal, shows that Carter's Motion sounds more under Fed. R. Crim. P. 29 than it does Fed. R. Crim. P. 12. *Second*, the defendant in *Sheppard* used the means of identification in an ancillary manner that did not directly enable the fraud, whereas Carter's use of the means of identification is the deception that defrauded the bank. 2024 WL 2815278 at *13.

In framing its holding, *Dubin* looked at the text of the statute to clarify the meaning of "use" and "in relation to" within § 1028A. *Dubin*, 599 U.S. at 118–127. The court first looked to the title of the statute and focused on the phrase "identity theft," which the court found had a "focused meaning." *Id.* at 122. According to the court, identity theft meant a "fraudulent appropriation and use of another person's identifying data or documents, as a credit card[,]" or an "unlawful taking and use of another person's identifying information for fraudulent purposes; specifically a crime in which someone steals personal information about and belonging to another, such as a bank-account number or driver's-license number, and uses the information to deceive others." *Id.*

The court found this "focused meaning" of identity theft to "support[] a reading of 'in relation to' where the use of the means of identification is at the crux of the underlying criminality." *Id.* This meant that the means of identification must play a "key role," or be a "key mover in the criminality." *Id.* at 123; *see also id.* at 129. Accordingly, the court also found this understanding to support "a more targeted definition of 'uses'" and interpreted it to mean "when a defendant uses the means of identification itself to defraud or deceive." *Id.* at 123. It further stated that a means of identification is used deceptively when the "deception goes to "who" is involved, rather than just "how" or "when" services are provided." *Id.* Taken together, the *Dubin* Court held:

> A defendant "uses" another person's means of identification "in relation to" a predicate offense when this use is at the crux of what makes the conduct criminal. To be clear, being at the crux of the criminality requires more than a causal relationship, such as " 'facilitation' " of the offense or being a but-for cause of its "success." Instead, with fraud or deceit crimes like the one in this case, the means of identification specifically must be used in a manner that is fraudulent or deceptive. Such fraud or deceit going to identity can often be succinctly summarized as going to "who" is involved.

*Id.* at 131–32.

### *i.*     *The Indictment Sufficiently Alleges Acts of "Identity Theft"*

Carter argues that Counts Fourteen and Eighteen must be dismissed because neither identity was "stolen." Carter misreads *Dubin*.

*Dubin* did not hold that identities needed to be "stolen." *Randall v. United States*, No. 5:16-CR-00518, 2024 WL 2783901, at *3 (E.D. Pa. May 29, 2024) (denying a motion to correct judgment for a defendant who deposited false checks into co-conspirator accounts, noting *Dubin* "did not specifically hold that the identity must be "stolen" in order to satisfy the statute."); *United States v. Jones*, No. 4:23CR09 (RCY), 2023 WL 4672383, at *5 (E.D. Va. July 20, 2023) (denying defendant's motion to dismiss indictment under *Dubin* even when the defendant had permission to use the means of identification to commit fraud). "In fact, the *Dubin* opinion acknowledges that the act of stealing an identity can 'include situations where [it] was initially lawfully acquired.'" *United States v. Jones*, No. 4:23CR09 (RCY), 2023 WL 4672383, at *5 (E.D. Va. July 20, 2023) (citing *Dubin*, at 132  n.6). Thus, *Dubin* teaches that aggravated identity theft punishes defendants who use a means of identification "in a manner that is fraudulent or deceptive," not defendants who "use" a means of identification as a secondary feature of their offense. *Dubin*, 599 U.S. at 131.

Here, Carter used Identity Theft Victim #3's and Account Mule #2's means of identification deceitfully. Carter acted deceitfully by altering Identity Theft Victim #3's check to defraud the bank and obtain money from Identity Theft Victim #3's account. Carter also acted deceitfully by altering Check 3411 to reflect Account Mule #2 as the payee, in addition to then using Account Mule #2's banking information and bank PIN to deposit the falsified check to defraud the bank. To be sure, Carter does not contest the sufficiency of the bank fraud or mail fraud and bank fraud conspiracy charges.

Moreover, the *Dubin* Court provided examples of "classic" instances of identity theft that Congress intended to capture in § 1028A by employing the "trio of verbs"—possession, transfer, and use. *Dubin*, 599 U.S. at 126. The Court stated:

> There is 'the defendant [who] has gone through someone else's trash to find discarded credit card and bank statements,' *ibid.*, and thus has taken possession unlawfully. There is the bank employee who passes along customer information to an accomplice, and thus transfers it unlawfully. Then there is use involving fraud or deceit about identity: 'a defendant [who] has used another person's identification information to get access to that person's bank account.'

*Id.* (citing *Flores-Figueroa v. United* States, 556 U.S. 646, 656 (2009)).

Here, Carter's conduct touches on all three modalities and examples of "classic identity theft." *First*, as alleged in Count Fourteen, Carter possessed Identity Theft Victim #3's means of identification (name, address, and bank account number) when she unlawfully *possessed* Check 590, which had been stolen from the mail. ECF No. 1 at 5–7. In short, this is similar to the defendant that goes "through someone else's trash to find credit cards and bank statements." *Dubin*, 599 U.S. at 126. Checks, credit cards, and bank statements are means of identification as defined by 18 U.S.C. § 1028(d)(7), and the Indictment. ECF No. 1 at ¶ 5; *see also United States v.* Weaver, 866 F.3d 882, 884 (8th Cir. 2017) ("[C]hecks with an individual's name, bank account number, and bank routing number is a 'means of identification' within the meaning of 18 U.S.C. § 1028(d)(7)."); *United States v. Alexander*, 725 F.3d 1117, 1120 (9th Cir. 2013) (same); *United States v. Gonzalez*, 666 Fed.Appx. 847, 849–50 (11th Cir. 2016) (unpublished) (holding that a check was used as a "means of identification" to commit bank fraud for the purposes of § 1028A when the check listed a first name, last name, and address that all matched a specific person's identification information) (unpublished). *United States v. Bowman*, 717 F. App'x 202, 204 (4th Cir. 2017) (upholding a conviction for aggravated identity theft where a defendant cashed checks associated with a stolen identity) (unpublished).

To this point, Carter argues that Identity Theft Victim #3's identity was not "stolen" but instead their "mail and in-transit payment" was only stolen. Deft. Mot. at 14. This is unpersuasive.

Stealing mail was the manner in which Carter and her co-defendants obtained the means of identification of real people, like Identity Theft Victims #1 through #5. There is no difference in conduct between what Carter and her co-defendants did to obtain identities and a scammer skimming credit cards at a gas station, or a hacker stealing credit card information from a website. Each loots its own vehicle and obtains the means of identification of real people, it just happens that some of Carter's identities came inside envelopes.

And, to the extent Carter argues that she did not "steal" the check, this argument is similarly unpersuasive. It is "elementary that one may be a member of a conspiracy without knowing its full scope, or all its members, and without taking part in the full range of its activities or over the whole period of its existence." *United States v. Banks*, 10 F.3d 1044, 1054 (4th Cir. 1993); *see United States v. Goldman,* 750 F.2d 1221, 1227 (4th Cir. 1984) ("It is not necessary that each member of a conspiracy have knowledge of all the details of the conspiracy, but it is only necessary that a conspirator have knowledge of the essential object of the conspiracy.")

Next, as previously mentioned, Carter's use of Identity Theft Victim #3's means of identification was deceitful, and, therefore, falls squarely within the example of "use" identity theft. *See Dubin*, 599 U.S. at 126. Carter "used" Identity Theft Victim #3's means of identification to defraud the bank and obtain money from Identity Theft Victim #3's bank account. The conduct is analogous to a defendant who uses "another person's identification information to get access to that person's bank account." *Id*. Indeed, Identity Theft Victim #3's check acted as a key which Carter used to unlock money from the victim's account.

*Second*, as alleged in Count Eighteen (and noted above), Carter acted deceitfully by both altering Check 3411 to reflect payment to Account Mule #2 and then depositing Check 3411 into Account Mule #2's account using their banking information. In doing so, Carter engaged in classic "use" identity theft because she used and accessed Account Mule #2's bank account deceptively.

14

Further, Carter also unlawfully "transferred and exchanged the banking information and means of identification" of Account Mule #2 with her co-defendants to commit fraud, ECF No. 1 at ¶ 14, which is analogous to the defendant who passes personal identifiable information to an accomplice. *See Dubin*, 599 U.S. at 126.

Carter argues, however, that Count Eighteen fails because she possessed, transferred, and used Account Mule #2's means of identification to commit fraud with consent. Deft. Mot. at 12–14. As previously noted, the Indictment does not allege that the account mules were accomplices, co-conspirators, or knew that their means of identification was going to be used unlawfully. This is Carter's definition. But even accepting Carter's definition," her argument lacks merit because it addresses a different element—lawful authority—which *Dubin* did not address. *Dubin*, 599 U.S. at 129 n.8. ("The Court need not, and does not, reach the proper interpretation of "without lawful authority."). To be sure, however, Carter acted without lawful authority when she possessed and used Account Mule #2's means of identification to commit fraud. *United States v. Otuya*, 720 F.3d 183, 189 (4th Cir. 2013) (holding that consent to hold or use someone's means of identification does not give the holder lawful authority to use it in the commission of a crime or fraud).

Further, district courts that have considered the "accomplice consent defense" post-*Dubin* have rejected it. For instance, in *United States v. Jones*, the defendant was charged with making a false statement in a passport application and aggravated identity theft for using his brother's identity to obtain a passport. 2023 WL 4672383 at *1. Like Carter, the defendant in *Jones* moved to dismiss arguing that his alleged conduct "fell outside the aggravated identity theft statute" after *Dubin*. *Id*. Also like Carter, the defendant in *Jones* took "issue with the classification of his actions as "theft" and pointed out that his brother did not consider himself a "victim of identity theft." *Id*. at *4. The court rejected the defendant's argument and held that even if his brother had provided him with permission to use his means of identification to commit passport fraud, he was still liable for

aggravated identity theft. *Id*. at *5.  The court explained that the defendant "lacked authority to misuse the means of identification" (relying on *Otuya*, 720 F.3d. at 189) and that "nowhere in *Dubin* or in related opinions is there an implication that the rightful owner of the identity must consider himself a victim in order for the defendant's conduct to constitute a violation of" § 1028A. *Id*.

Likewise, in *Randall v. United States*, No. 5:16-CR-00518, 2024 WL 2783901 at *1 (E.D. Pa. May 29, 2024), the defendant was convicted of bank fraud and multiple counts of aggravated identity theft for soliciting several co-conspirators for their ATM cards and PINs so that he could deposit fraudulent checks into their accounts and withdraw the funds before the banks realized the checks were invalid. The defendant sought relief under 28 U.S.C. § 2255 from his aggravated identity theft convictions arguing, like Carter, that "he should not have been charged with aggravated identity theft because he did not 'steal' the identities of his" co-conspirators because "he had permission to use their identities to perpetrate his fraud scheme." *Id*. at *2. The court rejected the argument stating that *Dubin* did not hold that the "identity must be 'stolen,'" nor did the *Dubin* address the meaning of "lawful authority" in § 1028A. *Id*. at *3.

Therefore, Carter's "consent" argument fails, especially in relation to a motion to dismiss an indictment.  Yet, Carter relies on *United States v. Crockett*, No. 3:22CR32-01, 2024 WL 100196, at *1 (E.D. Va. Jan. 8, 2024), to somehow support her argument that Count Eighteen must be dismissed. *Crockett* supports no such outcome. The matter before the court in *Crockett* was a motion to withdraw guilty plea based on the defendant's claim that under *Dubin* she was innocent—not a motion to dismiss. *Id*. at *1–2. While the court in *Crockett* permitted the defendant to withdraw her guilty plea, the court explicitly declined to consider the merits of her *Dubin* claim, despite the "Government urg[ing] the Court to reach the merits of how, if at all, *Dubin* applie[d]." Instead, the court stated that the "substantive arguments" concerning *Dubin* would be resolved "if, and when, Crockett moves to

dismiss the Indictment[.]" *Id*. at *4. Hence, *Crockett* is of limited use because it did not consider any substantive arguments or decide any issues raised by Carter's Motion.

Therefore, Counts Fourteen and Eighteen sufficiently allege post-*Dubin* "identity theft."

> ## ii.   The Indictment Sufficiently Alleges that the Use of the Identities Was at the Crux of the Criminality

Under § 1028A "[a] defendant 'uses' another person's means of identification 'in relation to' a predicate offense when the use is at the crux of what makes the conduct criminal." *Dubin*, 599 U.S. at 131. That is, "the means of identification specifically must be used in a manner that is fraudulent or deceptive . . . [and] can often be succinctly summarized as going to 'who' is involved," rather than how and when a service was performed. *Id*. at 131–32.

In *Gladden*, the Eleventh Circuit upheld aggravated identity theft convictions for a defendant (Linton) who had used the means of identification of former patients and prescribing doctors to overbill for certain products. 78 F.4th at 1245–46. Linton submitted to the insurance company a reimbursement for a prescription that a doctor had already issued to a patient, but that Linton had subsequently altered to include additional medically unnecessary drugs to permit her business to bill for them; thereby, misrepresenting to the insurance company that the doctor had *authorized* additional prescriptions when, in fact, the doctor had not. *Id*. (emphasis added). Linton also used the identifying information of patients to represent that those patients were receiving refills of prescriptions when they also were not.  The Eleventh Circuit held that by fraudulently altering an already signed prescription, Linton used the doctor's "'means of identification itself to defraud or deceive.'" *Id*. (citing *Dubin*, 599 U.S. at 123).  The *Gladden* Court also held that Linton's use of the patient's means of identification was also "fraudulent and deceptive" because Linton represented that those patients were receiving the refills. *Id*. The Court found that Linton's conduct fell "squarely within the classic variety of identity theft left untouched by *Dubin*." *Id*.

Here, like Linton, Carter deposited to the bank a check that Identity Theft Victim #3 had signed and issued, but that Carter had subsequently altered to reflect payment to a different individual whose bank account she controlled. Carter thus used Identity Theft Victim #3's "means of identification itself to defraud or deceive." *Dubin*, 599 U.S. at 123.  Further, Carter used the means of identification of Account Mule #2 to represent to the bank that Account Mule #2 had permission to receive the funds. Because, in both circumstances, the deception centered on the means of identification, Carter committed aggravated identity theft.

Indeed, Carter's circumstances are distinct from those in *Dubin* where the defendant misrepresented "*how* and *when* services" were performed. *Dubin*, 599 U.S. at 132. Carter's circumstances are equally dissimilar from those in *United States v. Sheppard*, No. 22-CR-20290, 2024 WL 2815278, at *13 (S.D. Fla. June 3, 2024). In *Sheppard*, the defendant "applied for loans for his own companies, and merely misrepresented that the forms were prepared by his usual tax preparer, when they were not." *Id*. The court dismissed the charges after trial because it found that Sheppard's scheme could "have been successful" even if he had not used his tax preparers information on the tax forms. *Id*. On the other hand, the success of Carter's scheme was dependent on her use of the means of identification of Identity Theft Victim #3 and Account Mule #2 because they are what deceived the bank.

Furthermore, Carter argues that Counts Fourteen and Eighteen should be dismissed because what is alleged is a "misrepresentation of authority," not identity, as "checks are not factual assertions." Deft. Mot. at 15.  In support of this argument, Carter's cites *Williams v. United States* 458 U.S. 279, 284 (1982), a case involving a defendant who made checks on an account containing insufficient funds. Carter's argument fails at the outset. *First*, [t]here is a fundamental difference . . . between checks drawn on an account containing insufficient funds, on the one hand, and affirmative misrepresentation made on the check itself, on the other." *Elliott v. United States*, 332 F.3d 753, 762

(4th Cir. 2003). In fact, the Fourth Circuit has explicitly observed that "'there is nothing in *Williams* that equates the passing of checks drawn on accounts with insufficient funds with fraudulently making or altering a document.'" *Id*. (citing *United States v. Price*, 763 F.2d 640, 643 (4th Cir. 1985). Therefore, Carter's reliance on *Williams* is misplaced, and her argument fails.

*Second*, even accepting Carter's "misrepresentation of authority" characterization, the outcome does not change because she deceitfully used the means of identification to defraud a bank. A misrepresentation of authority still goes to "who" is involved and not "how" or "when" services are provided. "Authority" is defined as being the "official right or permission to act, especially to act legally on another's behalf, Black's Law Dictionary (12th ed. 2024). Carter misrepresented that she had the right or permission to use Identity Theft Victim #3's identity—she misrepresented that Account Mule #2 had the right or permission to receive and withdraw the money from Identity Theft Victim #5's account—and she misrepresented that she had the right or permission to deposit a false check into Account Mule #2's account.

In fact, as previously noted, the Court in *Gladden* upheld Linton's aggravated identity theft conviction because Linton had misrepresented that the doctor "had *authorized* the additional prescriptions when, in fact, he had not." *Gladden*, 78 F.4th at 1245–46 (emphasis added). Similarly, in *United States v. Iannelli*, 700 F. Supp. 3d 1, 2 (D. Mass. 2023), the district court denied a motion to dismiss a charge of aggravated identity theft for a defendant who had committed bank fraud and used her employer's signature stamp to issue herself a check because the defendant had "misrepresented 'who' *authorized* the withdrawal of funds." *Id*. at 3. (emphasis added).

Therefore, no matter how Carter spins it, her outcome is the same—she committed aggravated identity theft—and the Indictment sufficiently apprises her of such. Carter's use of the identities was not second or "ancillary" to her frauds, it was at the crux of her criminality. Identity Theft Victim #3's altered means of identification is what defrauded the bank and was the "key

mover" in obtaining money from the bank and Identity Theft #3's bank account.[4] *Dubin*, 599 U.S. at 123. Likewise, the use of Account Mule #2's means of identification is what deceived the bank into depositing the funds to their account. Carter's "fraud was perpetrated by not only depositing invalid checks but mispresenting to the banks *who* was depositing and cashing the checks in order to obfuscate h[er] identity and further h[er] fraudulent scheme." *Randall*, 2024 WL 2783901 at *3. Thus, Carter not only "act[ed] without 'lawful authority in using other persons' identities to defraud banks, but the use of their identities was also at the crux of what made h[er] conduct criminal, as" she "specifically used the identities in a way that was fraudulent and deceptive." *Id.*

### IV.    The Aggravated Identity Theft Statute is Not Unconstitutionally Vague

Carter alternatively argues that Counts Fourteen and Eighteen should be dismissed because § 1028A is unconstitutionally vague, as there "is no way that an ordinary person in Carter's position could have known that she was committing identity theft." Deft. Mot. at 16–17.

First, an 8-1 Supreme Court majority in *Dubin* rejected the very same vagueness argument that Carter advances. Carter's argument is lifted from Justice Gorsuch's concurrence in *Dubin*, wherein Justice Gorsuch argues that, under the majority's "at the crux" test, "no boundary separates conduct that gives rise to liability from conduct that does not." *Dubin*, 599 U.S. at 132–38. After offering a series of hypotheticals to consider, Justice Gorsuch concluded that "mak[ing] sense" of § 1028A is an "impossible task" and therefore, in his view, the statute is unconstitutionally vague. *Id.* (citing *United States v. Davis*, 139 S. Ct. 2319, 2323 (2019)).

Eight Justice of the Supreme Court, however, declined to adopt Justice Gorsuch's conclusion and instead provided the courts with a test for determining when § 1028A has been violated: the "at the crux" test. In so doing, the majority considered—and rejected—Justice Gorsuch's view that §

---

[4] As noted above, Carter's possession of Identity Theft #3's identity violates not just the "use" modality of § 1028A, but also the "possession" modality. Therefore, there are multiple ways Carter violated §1028A.

1028A is unworkable. *Id.* at 132, n.10 ("The concurrence's bewilderment is not, fortunately, the standard for striking down an Act of Congress as unconstitutionally vague."). The majority opinion acknowledged that there would be "close cases," but responded that such cases are "commonplace in criminal law" and that "resolving hard cases is part of the judicial job description." *Id.* The Supreme Court, by offering a new framework under which § 1028A is to be applied, made clear that § 1028A is not unconstitutionally vague. *See e.g.*, *Gladden*, 78 F.4th at 1246 (rejecting petitioner's post-*Dubin* vagueness challenge); *United States v. Aldissi*, 758 F. App'x 694, 704 (11th Cir. 2018) (rejecting argument that § 1028A is unconstitutionally vague); *United States v. Wedd*, No. 15cr616, 2017 WL 3278923, at *5 (S.D.N.Y. July 31, 2017), aff'd, 993 F.3d 104 (2d Cir. 2021) (same). Further, district courts that have considered the issue have similarly rejected it. *See e.g. Demasi*, 2023 WL 8007341 at *5 (rejecting defendant's vagueness challenge); *Iannelli*, 700 F. Supp. 3d at 4 (same); *United States v. Boykins*, No. 3:23-CR-00024, 2024 WL 3463955, at *9 (E.D. Va. July 17, 2024) (same).

What's more, there is nothing particularly creative or boundary-pushing about the Government's theory of aggravated identity theft in this matter. A statute is impermissibly vague "if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits." *United States v. Lanning*, 723 F.3d 476, 482 (4th Cir. 2013). The Fourth Circuit has rejected arguments of impermissible vagueness "simply because [the statute] does not include the most elaborate or the most specific definitions possible." *Fusaro* v. Howard, 19 F.4th 357, 372 (4th Cir. 2021).

The nature of the alleged identity theft in this matter falls well within a common-sense understanding of the statute (as well as within the new "at the crux" test, for the reasons discussed above). Section 1028A prohibits the knowing transfer, possession, or use of another person's means of identification, without lawful authority, during or in relation to a specific set of enumerated

felonies. Carter's charges of mail fraud and bank fraud conspiracy and bank fraud are specifically enumerated felonies. *See* 18 U.S.C. § 1028A(c)(5). Means of identification is defined as "any name or number that may be used . . . to identify a specific individual. Carter is alleged to have possessed the names, addresses, and bank account number of Identity Theft Victim #3 and the name, address, online banking information, and bank PIN of Account Mule #2, which are means of identification. Carted then used the means of identification to commit bank fraud. Last, Carter was on notice that she did not have lawful authority to possess, transfer, or use either Identity Theft Victim #3's or Account Mule #3's means of identification to commit a crime. *See Otuya*, 720 F.3d at 189. Thus, § 1028A is not unconstitutionally vague as applied her.

Therefore, Carter's argument fails.

## V.      **CONCLUSION**

For the reasons stated herein, the Court should deny Carter's Motion to Dismiss Counts Fourteen and Eighteen of the Indictment (ECF No. 74).


Respectfully submitted,

Erek L. Barron
United States Attorney

By:      _____/s/_____
Bijon A. Mostoufi
Ranganath Manthripragada
Assistant United States Attorneys

## STATEMENT WITH RESPECT TO ORAL ARGUMENT

The United States respectfully suggests that oral argument is not necessary in this case. The legal issues are not novel, and oral argument likely would not aid the Court in reaching its decision.

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 9, 2024, a true and correct copy of the foregoing was electronically filed and served on counsel for the Defendants through ECF.

_____/s/_____

Bijon A. Mostoufi
Assistant United States Attorney
