# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| | * | |
| **Plaintiff,** | * | **CRIMINAL NO.  PJM 23-442** |
| | * | |
| **v.** | * | |
| | * | |
| | * | |
| **BINIAH CARTER,** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |

## REPLY IN SUPPORT OF
## DEFENDANT BINIAH CARTER'S MOTION TO DISMISS
## <u>COUNTS FOURTEEN AND EIGHTEEN OF THE INDICTMENT (DKT. 74)</u>

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. ii

I.      THE INDICTMENT'S ALLEGATIONS ........................................................... 2

II.     UNDER *DUBIN*, SECTION 1028A IS LIMITED TO (1) IDENTITIES THAT ARE
        STOLEN OR MISAPPROPRIATED IN CASES WHERE (2) DECEPTION ABOUT
        IDENTITY IS AT THE CRUX OF WHAT MAKES THE OFFENSE CRIMINAL ........ 2

        A.      *Dubin*'s Conclusion that "Transfer," "Possess," and "Use" Must Be Limited to
                Aspects of Classic Identity Theft Was Part of Its Holding and Is Binding on the
                Court ........................................................................................................... 3

        B.      The Government's "Without Lawful Authority" Cases Are a Red Herring, and In
                Any Event, Were Wrongly Decided ...................................................... 6

III.    COUNTS FOURTEEN AND EIGHTEEN SHOULD BE DISMISSED BECAUSE
        THEY FAIL TO ALLEGE EACH ELEMENT OF THE OFFENSE AND FAIL TO
        ALLEGE FACTS ESTABLISHING THE OFFENSE ...................................... 7

        A.      The Indictment Does Not Allege the Elements of the Offense ............................. 8

        B.      The Indictment Does Not Allege Facts Establishing the Two *Dubin* Requirements
                ................................................................................................................. 10

                1.      Count Fourteen Must Be Dismissed Because The Payor's Identity Was
                        Not Misrepresented at the Crux of the Offense ......................................... 10

                2.      Count Eighteen Must Be Dismissed Because the Payee's Identity Was
                        Not Stolen ................................................................................................. 13

IV.     IN THE ALTERNATIVE, COUNTS FOURTEEN AND EIGHTEEN SHOULD BE
        DISMISSED BECAUSE 18 U.S.C. § 1028A IS UNCONSTITUTIONALLY VAGUE 14

V.      CONCLUSION ......................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Clinchfield Coal Co. v. Harris*,
149 F.3d 307 (4th Cir. 1998) .................................................................7

*Dubin v. United States*
599 U.S. 110 (2023)................................................................... *passim*

*Fusaro v. Cogan*,
930 F.3d 241 (4th Cir. 2019) ...............................................................5

*Hamling v. United States*,
418 U.S. 87 (1974).................................................................................7

*Healthkeepers, Inc. v. Richmond Ambulance Auth.*,
642 F.3d 466 (4th Cir. 2011) ...............................................................7

*Hengle v. Treppa*,
19 F.4th 324 (4th Cir. 2021) ................................................................5

*In re Bateman*,
515 F.3d 272 (4th Cir. 2008) ...............................................................5

*In re Winship*,
397 U.S. 358 (1970)..............................................................................9

*Payne v. Taslimi*,
998 F.3d 648 (4th Cir. 2021) ...........................................................5, 6

*Potter v. United States*,
155 U.S. 438 (1894)..............................................................................7

*Randall v. United States*,
No. 16-cr-518, 2024 WL 2783901 (E.D. Pa. May 29, 2024) .............4, 6

*United States v. Bell*,
1 F.3d 1234 (4th Cir. 1993) (table).....................................................8, 9

*United States v. Boykins*,
No. 23-cr-24, 2024 WL 3463955 (E.D. Va. July 17, 2024) ....................11

*United States v. Brandon*,
298 F.3d 307 (4th Cir. 2002) ...............................................................7

*United States v. Crockett*,
   No. 3:22-CR32-01, 2024 WL 100196 (E.D. Va. Jan. 8, 2024) ............................................13

*United States v. Daniels*,
   973 F.2d 272 (4th Cir. 1992) .......................................................................................................8

*United States v. Gladden*,
   78 F.4th 1232 (11th Cir. 2023) ..................................................................................................10

*United States v. Hooker*,
   841 F.2d 1225 (4th Cir. 1988) .....................................................................................................8

*United States v. Jones*,
   No. 23-cr-09, 2023 WL 4672383 (E.D. Va. July 20, 2023) ....................................................4, 6

*United States v. Lesh*,
   107 F.4th 1239(10th Cir. 2024) ..................................................................................................14

*United States v. Noble*,
   No. 1:23-CR-00165-SDG, 2024 WL 253623 (N.D. Ga. Jan. 23, 2024)..................................12

*United States v. Otuya*,
   720 F.3d 183 (4th Cir. 2013) .................................................................................................6, 15

*United States v. Ovsepian*,
   No. 21-55515, 2024 WL 4020019 (9th Cir. Sept. 3, 2024) ......................................................12

*United States v. Pupo*,
   841 F.2d 1235 (4th Cir. 1988) (en banc) ....................................................................................7

*United States v. Sheppard*,
   No. 22-cr-20290, 2024 WL 2815278 (S.D. Fla. June 3, 2024), *appeal filed*,
   No. 24-12072 (11th Cir. June 25, 2024) .................................................................................2, 11

*United States v. Spears*,
   729 F.3d 753 (7th Cir. 2013) (en banc) .......................................................................................4

*United States v. Stevens*,
   771 F. Supp. 2d 556 (D. Md. 2011) .............................................................................................9

*United States v. Williams*,
   155 F.3d 418 (4th Cir. 1998) .......................................................................................................7

**Statutes**

18 U.S.C. § 1028A ........................................................................................................ *passim*

18 U.S.C. § 1956(c)(4).................................................................................................................9

iii

**Other Authorities**

***Steal***, *Black's Law Dictionary* (11th ed. 2019)....................................................................4

***Steal***, *Black's Law Dictionary* (12th ed. 2024)....................................................................4

This Motion to Dismiss presents a straightforward question.  A check Payor mailed a check to an intended recipient.  Ms. Carter's co-conspirators allegedly stole the check, erased the recipient's name, and wrote in the name of an account mule recruited by Ms. Carter as the new Payee on the check.  The check was then deposited and the proceeds withdrawn before the bank realized that the check was meant to go to the recipient, not the Payee.  The question presented is whether Ms. Carter thereby committed Aggravated Identity Theft against either the Payor or the Payee.  The answer is no.

18 U.S.C. § 1028A contains three prohibitions: knowingly (1) transferring, (2) possessing or (3) using a means of identification without lawful authority to commit a predicate offense.  Under *Dubin v. United States* 599 U.S. 110 (2023), each of those three prohibitions has two requirements.  The first requirement (the identity theft requirement) is that each prohibition applies only in circumstances involving classic identity theft.  *Dubin*, 599 U.S. at 126-27.  The second requirement (the crux requirement) is that each prohibition applies only to acts at the crux of what makes the predicate offense criminal.  *Id.* at 131.  The stolen means of identification must be used deceptively—there must be "fraud or deceit going to identity."  This is often summarized as deceit regarding "who" is involved.  *Id.* at 131-32.  This deceit must rise above the level of merely facilitating the offense or causing it succeed.  *Id.*  Instead, the deceit must be a misrepresentation about the victim's means of identification.

The Indictment alleges neither the identity theft requirement nor the crux requirement.  The Payor's means of identification were not misrepresented, and there was no fraud or deceit going to the Payor's means of identification.  Therefore, Count Fourteen fails the crux requirement.  The Payee's means of identification were not stolen.  Therefore, Count Eighteen

fails the identity theft requirement.  As a result, both Count Fourteen and Count Eighteen must be dismissed.

## I.        THE INDICTMENT'S ALLEGATIONS

The Indictment alleges Ms. Carter was part of a broader conspiracy to commit mail and bank fraud.  The relevant counts (Fourteen and Eighteen) allege that Ms. Carter was directly involved in two transactions: the May 21, 2021 deposit of an $800 check from the account of Identity Theft Victim # 3 ("Payor"), and the June 29, 2021 deposit of an $8,912.50 check into the account of Account Mule # 2 ("Payee").  Count Fourteen charges Ms. Carter with Aggravated Identity Theft of the Payor's identity.  Count Eighteen charges Ms. Carter with Aggravated Identity Theft of the Payee's identity.

## II.       UNDER *DUBIN*, SECTION 1028A IS LIMITED TO (1) IDENTITIES THAT ARE STOLEN OR MISAPPROPRIATED IN CASES WHERE (2) DECEPTION ABOUT IDENTITY IS AT THE CRUX OF WHAT MAKES THE OFFENSE CRIMINAL

The Supreme Court's holding in *Dubin v. United States* established two requirements: "an identity theft requirement" and an "at the crux requirement."  *United States v. Sheppard*, No. 22-cr-20290, 2024 WL 2815278, at *7, *11-12 (S.D. Fla. June 3, 2024), *appeal filed*, No. 24-12072 (11th Cir. June 25, 2024).  In other words, "*Dubin* requires [both] the occurrence of identity theft during a predicate offense [and that] the identity theft must be 'at the crux' of the predicate offense."  *Id.* at *14 n.5.  The "identity theft requirement" dictates that the prohibitions in § 1028A apply only to circumstances in which the information "transfer[red]," "possess[ed]," or "use[d]" has been stolen or misappropriated.  The "at the crux requirement" dictates that § 1028A requires proof that the transfer, possession, or use of means of identification did more than merely facilitate the predicate offense or cause its success.  Instead, the transfer, possession, or use of the means of identification must have been at the crux of what makes the underlying

2

offense criminal.  In its Opposition, the government does not contest (and therefore concedes) the "at the crux requirement's" existence.  This Section therefore addresses only the "identity theft requirement."

### A. *Dubin*'s Conclusion that "Transfer," "Possess," and "Use" Must Be Limited to Aspects of Classic Identity Theft Was Part of Its Holding and Is Binding on the Court

*Dubin*'s outcome is based on its conclusion that each of § 1028A's three prohibitions (transfer, possession, and use) refer to circumstances in which an identity has been stolen. Because that conclusion was a necessary step in reaching the outcome, it is part of *Dubin*'s holding.  The question presented in *Dubin* was whether § 1028A's prohibition on "us[ing] a means of identification in relation to a [predicate fraud offense]" reaches any "use of that means of identification [that] facilitates or furthers the predicate offense," or only those uses where "the means of identification is at the crux of what makes the predicate offense criminal."  *Dubin*, 599 U.S. at 117.  In order to resolve that question, the Supreme Court interpreted *all three* of § 1028A's prohibitions: use, transfer, and possession.

The Court concluded that "[t]he two neighboring verbs here, 'transfers' and 'possesses,' are most naturally read in the context of § 1028A(a)(1) to connote theft."  *Dubin*, 599 U.S. at 125.  "Generally, to unlawfully 'possess' something belonging to another person suggests it has been stolen.  And to unlawfully 'transfer' something belonging to another person similarly connotes misappropriating it and passing it along."  *Id.*

"The Government, at argument, agreed: these two verbs 'refer to circumstances in which the information is stolen [or misappropriated].'"  *Id.* (citation omitted).[1]  "'Transfer' and

---

[1] Elsewhere, the Court clarified that classic identity theft includes cases in which the information is misappropriated rather than stolen.  *Id.* at 126-27 ("Identity theft thus intermingles aspects of theft and fraud, misappropriation and deceitful use."); *id.* at 123 ("'[I]dentity theft' occurs when someone's

3

'possess' not only connote theft, but identity theft in particular." 599 U.S. at 125. "Because 'transfer' and 'possess' channel ordinary identity theft, *noscitur a sociis* indicates that 'uses' should be read in a similar manner to its companions." *Id.* at 126 (describing each prohibition in § 1028A as an "aspect[] of 'classic identity theft'").

The Opposition repudiates this finding that the prohibitions in § 1028A are limited to "circumstances in which the information is stolen [or misappropriated]"—despite the Department of Justice's previous agreement. Opposition to Mot. to Dismiss at 12 (Dkt. 87) ("Opp."). Instead, the government takes the position that § 1028A prohibits possessing, transferring, or using any means of identification, regardless of whether that information was stolen or misappropriated. *Id.*[2] The government's about-face is unsupportable because it is based on a misconception of what part of the Court's opinion is part of its holding. Specifically, the Opposition attempts to limit *Dubin*'s holding to a sentence requiring proof that the defendant used the means of identification in a fraudulent or deceptive manner. *Id.* ("*Dubin* teaches that aggravated identity theft punishes defendants who use a means of identification in a manner that is fraudulent or deceptive . . . .").

_____

'identity has been stolen or misappropriated'" (quoting *United States v. Spears*, 729 F.3d 753, 756 (7th Cir. 2013) (en banc))).

[2] The Opposition and two unpublished decisions misinterpret *Dubin*'s footnote 6 that "'Steal[ing]' can, of course, include situations where something was initially lawfully acquired." *Dubin*, 599 U.S. at 122 n.6 (citing *Black's Law Dictionary* (11th ed. 2019) (defining "steal")). The government somehow reads this statement about the definition of "stealing" to mean that the identities need not be stolen at all. Opp. at 12 (citing *Randall v. United States*, No. 16-cr-518, 2024 WL 2783901, at *3 (E.D. Pa. May 29, 2024); *United States v. Jones*, No. 23-cr-09, 2023 WL 4672383, at *5 (E.D. Va. July 20, 2023)). That is contrary to footnote 6's plain text. Footnote 6 is saying that the means of identification must be "stolen," but that "stealing" includes direct theft *and* situations where something was initially lawfully acquired but under "false pretenses," or was "embezzle[d]." *Steal*, *Black's Law Dictionary* (12th ed. 2024) ("1. To take (personal property) illegally with the intent to keep it unlawfully. 2. To take (something) by larceny, embezzlement, or false pretenses.") (attached as Silverman Decl. Ex. A). Theft and misappropriation do not, however, extend to scenarios like that pled in the indictment, where no false pretenses or embezzlement are alleged.

*Dubin*'s holding is not limited to the single sentence chosen by the Opposition.  All parts of a court's reasoning that are essential to the outcome of a case are part of its holding.  Mot. to Dismiss (Dkt. 74) ("Opening MTD") at 9-10 (collecting cases); *e.g.*, *Payne v. Taslimi*, 998 F.3d 648, 654-55 (4th Cir. 2021) ("If necessary to the outcome, a precedent's reasoning must be followed.").[3]  In *Dubin*, the Court found that the terms "use" and "in relation to" "do not, standing alone, conclusively resolve this case."  *Dubin*, 599 U.S. at 118.  Because resolving the case based on the terms in the question presented was not otherwise possible, the Court found that it was "especially necessary" to interpret the statutory phrases that provided context for the terms: "possesses" and "transfers."  *Id.* at 119.  This "especially necessary" interpretation concluded that "possess" and "transfer" are limited to circumstances in which the possessed or transferred information was stolen and that "use" is similarly limited to use within the scope of classic identity theft.  The Court's basis for the outcome—and therefore the Court's holding—was that all three verbs only apply to actions that are part of classic identity theft.[4]  Because the *Dubin* Court relied on its conclusion that all three verbs in § 1028A are limited to actions within ordinary identity theft in reaching its holding that the third verb was similarly limited, that conclusion is a binding part of its holding.

---

[3] Even if it were dicta, which it is not, the Fourth Circuit instructs that courts "are 'obliged to afford great weight to Supreme Court dicta.'"  *Hengle v. Treppa*, 19 F.4th 324, 347 (4th Cir. 2021) (quoting *Fusaro v. Cogan*, 930 F.3d 241, 254 (4th Cir. 2019) and collecting cases)); *In re Bateman*, 515 F.3d 272, 282 (4th Cir. 2008) (acknowledging that Supreme Court dicta "should have considerable persuasive value in the inferior courts" (internal quotation marks omitted)).

[4] The government's opposition effectively concedes as much by agreeing that "in framing its holding," the Court concluded that identity theft begins with "fraudulent appropriation" or "unlawful taking" of another person's means of identification, and concluding the next paragraph by saying that the foregoing reasoning "[t]aken together," led to the Court's result.  Opp. at 11.

**B.      The Government's "Without Lawful Authority" Cases Are a Red Herring, and In Any Event, Were Wrongly Decided**

The government relies on a pair of unpublished opinions about whether a defendant who has a co-conspirator's permission to use their identity to commit fraud acts "without lawful authority" by doing so.  Opp. at 15-16 (citing *Randall*, 2024 WL 2783901, at *3, *Jones*, 2023 WL 4672383, at *5).  Those cases are both inapposite and wrongly decided.

First, the lawful authority cases are inapposite because regardless of whether a defendant acted without lawful authority, *Dubin* holds that § 1028A's trio of prohibited acts are limited to acts falling within the ambit of "classic identity theft."  There must be a prohibited act in order to state an offense under § 1028A, and the Indictment here does not plead a prohibited act.

Second, even if the Court does reach the "without lawful authority" prong, the cited cases interpreting that prong were wrongly decided.  The government and its only in-circuit case law, *Jones*, both rely on *United States v. Otuya*, 720 F.3d 183 (4th Cir. 2013), and *Otuya* is no longer good law after *Dubin*.  *See* Opening MTD at 9-10.  *Otuya* holds that using a co-conspirator's identification with their consent constitutes aggravated identity theft. 720 F.3d at 189.  *Otuya*'s sole rationale for that holding was that "[t]o excuse Otuya's act of using another person's identification to defraud Bank of America of thousands of dollars simply because a coconspirator agreed to let him do so would produce an untenable construction of the statute and an unacceptable result."  *Id.*  That rationale was wrong when written—declining to apply a draconian enhancement does not excuse the predicate offense—and obviously contrary to *Dubin*, which instructs that § 1028A's terms like "lawful" cannot be read "broadly and in isolat[e]"; instead the Court in *Dubin* held that "a more targeted reading" is appropriate.  *Dubin*, 599 U.S. at 117.  "[W]here subsequent Supreme Court decisions 'clearly undermine[]' a panel precedent," however, that precedent is no longer binding and need not be followed.  *Payne*, 998 F.3d at 655

n.4 (second alteration in original) (quoting *United States v. Williams*, 155 F.3d 418, 421 (4th Cir. 1998)).  Here, *Dubin* clearly undermines *Otuya*'s holding that § 1028A prohibits using anyone's identity with consent, and that holding is no longer binding.

Moreover, *Otuya*'s conclusion that "one does not have 'lawful authority' to consent to the commission of an unlawful act" would render the "without lawful authority" element mere surplusage.  *Every* possession, transfer, or use of a means of identification to commit a predicate offense would be sufficient to satisfy the "without lawful authority" element.  Because the "without lawful authority" element would automatically be met by any predicate offense, it would be mere surplusage.  *Cf. Healthkeepers, Inc. v. Richmond Ambulance Auth.*, 642 F.3d 466, 472 (4th Cir. 2011) ("'In interpreting a statute, we should strive to give effect to every word that Congress has used' to avoid surplusage." (quoting *Clinchfield Coal Co. v. Harris*, 149 F.3d 307, 313 (4th Cir. 1998))); *Potter v. United States*, 155 U.S. 438, 446 (1894) (statutory language "cannot be regarded as mere surplusage; it means something").  The government's reading of "without lawful authority" relies on outdated law and would violate the canon against surplusage and should therefore be rejected.

## III.   COUNTS FOURTEEN AND EIGHTEEN SHOULD BE DISMISSED BECAUSE THEY FAIL TO ALLEGE EACH ELEMENT OF THE OFFENSE AND FAIL TO ALLEGE FACTS ESTABLISHING THE OFFENSE

To be valid, the Indictment must pass two relevant hurdles.  First, it must "fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished."  *United States v. Pupo*, 841 F.2d 1235, 1239 (4th Cir. 1988) (en banc) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)).  Second, the indictment must contain a statement of the alleged facts constituting the offense charged.  *United States v. Brandon*, 298 F.3d 307, 310 (4th Cir. 2002).  The Indictment here fails both hurdles.  It does not allege the two *Dubin* elements, and the facts alleged do not establish those elements.

7

A.      **The Indictment Does Not Allege the Elements of the Offense**

The obligation to include all essential elements derives from the Fifth Amendment, "which requires that the grand jury have considered and found all elements to be present." *United States v. Hooker*, 841 F.2d 1225, 1230 (4th Cir. 1988).  An essential element is a fact "necessary to establish the very illegality of the behavior" under the charged statute.  *United States v. Daniels*, 973 F.2d 272, 275 (4th Cir. 1992) (quoting *Hooker*, 841 F.2d at 1231).

The government argues that *Dubin*'s requirements "clarified the interpretation of [existing] elements," are not elements in their own right, and therefore need not be pled in the indictment or presented to the grand jury.  Opp. at 9.  The government supports its argument by pointing to Sand's jury instructions, which "cited *Dubin* when *explaining* the first element, 'Use of Means of Identification,'" rather than as a separate element.  Setting aside the fact that multiple judges and circuits have disagreed with Sand and instruct juries on one or more of *Dubin*'s requirements,[5] the government's argument proves that the Motion should be granted.

The Fourth Circuit has rejected the distinction between "element" and "definition of element" that the government advances.  In *United States v. Bell*, the government charged a defendant with money laundering, tracking the statutory language to allege that the defendant "conduct[ed] a 'financial transaction.'"  1 F.3d 1234 (4th Cir. 1993) (table), 1993 WL 309611, at *2.  The government did not, however, include the definition of "financial transaction," which

---

[5] *See* Opening MTD at 6; *see also, e.g.*, Ninth Circuit Pattern Instr. 15.9 ("A means of identification is used 'during and in relation to' a crime when the means of identification is used in a manner that is fraudulent or deceptive and is at the crux of what makes the conduct criminal."); Fifth Circuit Pattern Instr. 2.48C ("It is not enough to be a violation of this law that the use of a means of identification was helpful or even necessary to accomplish the charged conduct unless the accused used that means of identification to deceive about the identity of the person performing the actions or receiving the benefits or services.").  Other pattern instructions have not yet been revised in light of *Dubin*.  *See, e.g.*, Eighth Circuit Pattern Instr. 6.18.1028A cmt. ("The Committee is considering what revisions are required to this instruction in light of *Dubin*.").

defines the term to be limited to those transactions that crossed into interstate commerce. *Id.* (citing 18 U.S.C. § 1956(c)(4)).  The court held that despite its role as a definition or clarification of the element, "the interstate commerce nexus is an essential element of [the] offense," because it is necessary to establish illegality.  1993 WL 309611, at *2..  "Placement in the 'definitional' subsection of [a statute] rather than the "offense creation" subsection lacks legal significance when the definition contains *a distinct fact that must be proven beyond a reasonable doubt in order to convict a defendant of the crime charged*." *Id.* (emphasis added).  So too here.  Both of *Dubin*'s requirements are necessary facts that must be proven beyond a reasonable doubt to establish that conduct is criminal under § 1028A.  They are therefore elements that must be pled and proven beyond a reasonable doubt. *See In re Winship*, 397 U.S. 358, 361 (1970).

Moreover, even if "the *Dubin* Court [merely] *clarified the interpretation*" of § 1028A's elements and did not add elements, Opp. at 9, it still appears that the grand jury did not receive the benefit of that "clarifica[tion]" and instead harbored under a misconception of § 1028A's reach.  The grand jury was not instructed[6] that § 1028A (1) applies only to circumstances in which the information "transfer[red]," "possess[ed]," or "use[d]" has been stolen or misappropriated; and (2) applies only to the transfer, possession, or use of a means of identification at the crux of what makes the underlying offense criminal.  Ms. Carter was thereby deprived of her right to an independent and informed grand jury, and the resulting counts must therefore be dismissed.

---

[6] This conclusion flows from the government's legal argument and insistence that these are not elements to the offense.  In the alternative, Ms. Carter moves for production of the legal instructions given to the grand jury or for *in camera* review of those instructions. *See United States v. Stevens*, 771 F. Supp. 2d 556, 564-66 (D. Md. 2011) (ordering production of grand jury transcripts for *in camera* review "because the Government may have failed to properly instruct the grand jury regarding the advice of counsel defense").

B.     **The Indictment Does Not Allege Facts Establishing the Two**
       ***Dubin* Requirements**

The Indictment does not allege facts establishing the two *Dubin* requirements as to either

the Payor identity (Count Fourteen) or the Payee identity (Count Eighteen).

*1.     Count Fourteen Must Be Dismissed Because The Payor's Identity Was Not
        Misrepresented at the Crux of the Offense*

The Payor mailed a check—a directive for the bank to withdraw $800 from his/her

account and deposit it into a third party's account.  Ind. at 5.  That check was allegedly stolen

by Tianna Cosby or Marche Sisco.  *See* Ind. at 3.  The payee on the check was altered, but the

Payor's name remained the same.  Ind. at 4 (noting that the alterations were "to reflect payment

to account mules," who had been recruited as part of the conspiracy).  The allegations, taken

as true, do not establish the *Dubin* requirements.

The Payor's identity was not misrepresented at all much less used "specifically in a

fraudulent or deceitful manner."  *Id.*  An identity is used in a fraudulent or deceitful manner

when the "deception goes to 'who' is involved," *Dubin*, 599 U.S. at 123, i.e., deceiving the bank

into believing that the Payor account is owned by Payor when it was truly owned by a third

party.  In *Dubin*, the Court held that patients' means of identification were not at the crux of the

offense, because while "the patients' names were part of the billing process," they were not the

"part" being misrepresented.  *Id.* at 117.  In *United States v. Gladden*, similarly, the Eleventh

Circuit held that "misrepresent[ing] who was receiving [medically unnecessary] prescriptions"

was at the crux of a reimbursement fraud, but using an identity to fill medically unnecessary

prescriptions actually sent to that patient was not at the crux of that fraud.  78 F.4th 1232, 1248-

49 (11th Cir. 2023) ("While Linton misrepresented who was receiving the prescriptions,

Gladden's misrepresentation to the insurance companies and PBMs involved only whether the

prescriptions were medically necessary.  This conduct was illegal—as we discuss above—but it

was not aggravated identity theft.").  Just as there was no allegation that Gladden's patient received the unnecessary drugs, here, there is no allegation that the Payor owned the account to be debited.  Instead, just as Gladden misrepresented whether the patient needed or took the drugs, here, the defendants allegedly altered a directive from the Payor without deceiving anyone as to whose account (the Payor's) should be debited.  Because the Payor's identity was not the misrepresented fact, it was not at the crux of the fraud.

Even in cases where the identity is misrepresented, that does not mean that the misrepresentation falls at the crux of the fraud.  For example, in *Sheppard*, a loan applicant misrepresented whether his accountant had been the one to draft supporting documents that misrepresented the applicant's business.  The court held that while the defendant may have committed fraud, he must be acquitted of aggravated identity theft because the crux of that fraud was a misrepresentation about the business, "not a misrepresentation about the [accountant's] identity."  *Sheppard*, 2024 WL 2815278, at *4; Here, the indictment may allege fraud about which account should be credited, but it does not misrepresent the account to be debited or contain a "misrepresentation about the [Payor's] identity."  The Payor's means of identification is not the part of the check deposit process being misrepresented in this case.  Even if the government's allegation were correct—that the defendants "alter[ed] . . . the *payee*" on Check 3411, Opp. at 14, that would not be a deceitful use of the *Payor*'s means of identification. Instead, at most, it would be deceitful use of the payee's means of identification. No one posed as the Payor, pretended to be the Payor, or otherwise stole the Payor's identity.[7]

---

[7] The government compares Count 14 to a defendant that goes "through someone else's trash to find credit cards and bank statements," Opp. at 13 (citing *Dubin*, 599 U.S. at 126), but the fact that makes that scenario identity theft is when the bandit then uses that information to pose as the victim in order to obtain new lines of credit and bank accounts.  Stealing a credit card is theft; stealing means of identification in order to open a new credit card posing as the victim is identity theft.  *See, e.g.*, *United States v. Boykins*, No. 23-cr-24, 2024 WL 3463955, at *6 (E.D. Va. July 17, 2024) ("[I]dentity theft has

*Dubin* forecloses the government's attempt to water down the "at the crux requirement" by arguing that accurate representation of a means of identification is sufficient as long as the defendant is contemporaneously committing fraud.  *See* Opp. at 14 (arguing that Carter's use was deceitful because "Carter 'used' [Payor]'s means of identification to defraud the bank").  *Dubin* is clear that merely using a means of identification while committing fraud is not enough. *United States v. Ovsepian*, No. 21-55515, 2024 WL 4020019, at *9 (9th Cir. Sept. 3, 2024) (vacating § 1028A conviction for possessing a patient's means of identification to protect against audits of fraudulent prescriptions reasoning that "the Court in *Dubin* sought '[t]o be clear' that merely facilitating a predicate offense is not enough"); *United States v. Noble*, No. 1:23-CR-00165-SDG, 2024 WL 253623, at *2 (N.D. Ga. Jan. 23, 2024) ("Clearly, after *Dubin*, not all fraud involving another's identity constitutes aggravated identity theft . . . .").

Merely because use of an identity is material, or even "necessary," to complete the crime, does not make it the "crux" of the criminal activity.  *Dubin*, 599 U.S. at 114-15, 132.  In fact, the *Dubin* defendant's use of real patients' identities was material and unquestionably necessary for the defendant to receive his fraudulent and inflated reimbursements, yet the Supreme Court held that these material and necessary elements did not constitute the crux of the crime, and thus fell outside of § 1028A.  *Id.*

---

been defined as 'the unlawful taking and use of another person's identifying information for fraudulent purposes; specif[ically] a crime in which someone steals personal information about and belonging to another, such as a bank-account number or driver's-license number, and uses the information to deceive others.'" (quoting *Dubin*, 599 U.S. at 122)). The Indictment alleges only the former scenario: theft of a victim's check without any deception as to the victim's identity or attempt to pose as the victim.  That is theft, but it is not identity theft or deception as to the Payor's means of identification.

### 2. Count Eighteen Must Be Dismissed Because the Payee's Identity Was Not Stolen

No one stole the Payee's identity—not according to the Indictment's allegations[8] and not in actuality.  The government claims that the Indictment does not allege that "all" of the account mules "knew about the scheme," Opp. at 4 n.1, but the government misses the point.  It is the government's burden to plead facts amounting to a violation of § 1028A, and that cannot be done without pleading that the identity being transferred, used, or possessed was stolen or misappropriated.  The government has not pled that Account Mule #2's identity was stolen or that he was in any way defrauded out of his identification information, and the Indictment therefore fails.

Although the government argues that depositing an altered check into a willing Payee's account constitutes "classic identity theft," the government is wrong as revealed by its comparison to *Dubin*.  The government argues that using a willing Payee's account is similar to the "bank employee who passes along customer information to an accomplice."  Opp. at 15.  In that scenario, however, the customer has willingly given their information to the bank for a limited purpose, and the bank employee has misappropriated that information for a second, unapproved purpose.  No such allegations exist here, where the account mule was instead recruited into the scheme, Ind. at 3, and is not alleged to have been tricked or deceived in any way.[9]

---

[8] It makes no difference whether the government styles the account mule a "co-conspirator."  Either way, the government has not alleged that the account mule was defrauded or deceived into permitting the use of his/her identification information.  There was no "theft," much less identity theft.

[9] The government attacks *United States v. Crockett*, No. 3:22-CR32-01, 2024 WL 100196 (E.D. Va. Jan. 8, 2024) as unpersuasive, arguing that the court in that decision specifically declined to reach the merits of *Dubin* at the decision's procedural posture, which was on a motion to withdraw a guilty plea relating to a § 1028A charge.  The government, however, completely ignores that after the court in Crockett held that the defendant had a valid defense and allowed her to withdraw her guilty plea, the prosecution voluntarily moved to dismiss and vacate the § 1028A charge.  *See Crockett*, Consent Motion to Vacate Count 4 of

Although Ms. Carter allegedly used the Payee's PIN, there is no allegation that Ms. Carter or anyone else stole the Payee's identity.  The defendants did not pose as the Payee or assume their identity by accessing the Payee's bank account with their agreement.  Indeed, it is common to share bank account information and a computer user does not attest to their identity by logging in.  To hold otherwise would transform every helpful grandchild assisting their grandparents with online banking services into identity thieves.

## IV.    IN THE ALTERNATIVE, COUNTS FOURTEEN AND EIGHTEEN SHOULD BE DISMISSED BECAUSE 18 U.S.C. § 1028A IS UNCONSTITUTIONALLY VAGUE

Section 1028A, as interpreted by *Dubin* and applied to this case, is unconstitutionally vague.  Its imprecise and subjective standard fails to provide fair notice and creates significant risk of arbitrary enforcement, as seen here.  While the government focuses on the fact that this argument was raised by Justice Gorsuch and not the majority in *Dubin*, cases like Ms. Carter's demonstrate just how little guidance and notice are available to the ordinary public attempting to discern what conduct is or is not prohibited by the aggravated identity theft statute.

Regardless of whether Justice Gorsuch is correct about the statute's facial vagueness, it is void for vagueness as applied to Ms. Carter.  No "common-sense understanding" of an identity theft statute would extend to cases like this in which no identity is stolen.  Assuming, arguendo, that Ms. Carter was brought into a conspiracy where she recruited account mules to willingly deposit stolen checks, she would have no idea that she was stealing her recruit's identities or those of the check writers.  *See United States v. Lesh*, 107 F.4th 1239, 1246-48(10th Cir. 2024) (holding that statute prohibiting "conducting any kind of work activity or service" on federal

---

Ind. (E.D. Va. Jan. 29, 2024), ECF No. 183.  The prosecution there—just like the Department of Justice in oral arguments in Dubin—apparently recognized that § 1028A does not prohibit the use, transfer, or possession of means of identification with the owner's consent.

land may have had "a clear meaning in the abstract, [but] it becomes vague when applied to" an influencer taking promotional photos of himself).  The government's contrary argument is based on *Otuya*, but the government cites no precedent or logic for why a civilian would know that a circuit court had ignored the "common-sense understanding" of identity theft and instead extended the statute to cases that do not involve a stolen identity.

There is no way that an ordinary person in Ms. Carter's position could have known that she was committing identity theft against a check writer who she did not impersonate or a check payee who consented to accessing his account. The statute is unconstitutionally vague and Counts Fourteen and Eighteen should be dismissed.

## V.    CONCLUSION

For these reasons, Ms. Carter respectfully requests that this Court enter an Order dismissing Count Fourteen and Count Eighteen of the Indictment.

Respectfully submitted,

/s/ *Nicholas Silverman*
Steven H. Levin, Bar No. 28750
Nicholas Silverman, *admitted Pro Hac Vice*
Myles Ashong, *admitted Pro Hac Vice*
**STEPTOE LLP**
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036-1795
(202) 429-3000

*Counsel for Defendant Biniah Carter*

Dated: September 6, 2024

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Reply In Support of Defendant's Motion to Dismiss Counts Fourteen and Eighteen of the Indictment, and accompanying papers, was served via ECF, this sixth day of September 2024, upon all attorneys included on the ECF notice in criminal number PJM-23-442.

/s/ Nicholas Silverman
**STEPTOE LLP**

*Counsel for Defendant Biniah Carter*